## DOENCH *v.* STATE OF INDIANA.

[No. 13,615. Filed March 29, 1929.]

*R. W. Armstrong,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Harry L. Gause,* Deputy Attorney-General, for the State.

McMAHAN, P. J.—Appellant, in stating the nature of the action, says it is a prosecution against him on an affidavit filed in the city court of the city of Hunting-burg, charging him with manufacturing intoxicating liquor; that, following his arrest, he entered a plea of guilty, and was thereupon fined $500 and sentenced to the state farm for a period of six months, from which judgment he appealed to the circuit court of Dubois county. Inasmuch as appellant has not, in his brief, set out the affidavit on which he was prosecuted, nor any part of the record of the proceedings in the city court, we shall assume appellant, by such statement of the nature of the action, has correctly stated what the issues were in the circuit court, since it appears that the judgment in the circuit court is based upon the affidavit filed in the city court and appellee's plea of guilty entered in that court. After the appeal to the circuit court, appellant filed his application for leave to withdraw his plea of guilty, which application is, in substance, as follows: That he was unacquainted with courts and court proceedings, he never having been in a court room before; that he was arrested at night; that he did not have access to an attorney; that he was not acquainted with any lawyer in Dubois county; at the time of arrest, he was living in an out-of-way, secluded locality near the town of Holland; that there were no lawyers at Holland; that, on being arrested, he was taken before the city court where he was asked if he wanted a lawyer; that he did not know of any lawyer whose services he could procure; that, before being arraigned, he was placed in the city jail and had no chance to procure a lawyer; that he was arraigned about 9 o'clock p. m.; that the mayor and the prosecuting officers in charge promised

him if he would plead guilty, the court would impose the least punishment for the violation of the law known to the statute; that, not knowing his rights and being greatly excited, he did not have the free and untrammeled use of his mind and did not know what was the best 'course to pursue. The prosecuting attorney filed a denial to this application, and the court, after hearing evidence upon the question, refused to allow the plea of guilty to be withdrawn, refused appellant's request for a jury, found him guilty, and fixed his punishment at a fine of $300, and imprisonment in the state farm for a period of ninety days.

The only question for decision relates to the action of the court in refusing appellant leave to withdraw his plea of guilty entered in the city court. It is the law in this jurisdiction that where there has been a plea before a justice of the peace in a prosecution for a misdemeanor, no further plea is required in the circuit court on appeal. *Johns* v. *State* (1886), 104 Ind. 557, 4 N. E. 153; *Eisenman* v. *State* (1875), 49 Ind. 520; *Cline* v. *State* (1900), 25 Ind. App. 331, 58 N. E. 210. And such plea cannot be withdrawn without leave of court. *Peters* v. *Koepke* (1901), 156 Ind. 35, 59 N. E. 33. Ordinarily, the granting of leave to withdraw a plea of guilty is within the sound discretion of the trial court. Where it appears that the trial court has abused its discretion in denying an application to withdraw a plea of guilty, the court of appeal will review the ruling, but when it appears that the ruling on such an application is based on conflicting evidence, the appellate tribunal will not disturb the conclusion reached by the trial court. *Atkinson* v. *State* (1920), 190 Ind. 1, 128 N. E. 433.

Appellant testified that he was living on a farm near Holland when arrested, had just reached home from Evansville; his wife and child and John Niehaus were with him; Mr. Marshall and three other men were there

when he was arrested; was taken to Huntingburg; Marshall said if he wanted to plead guilty they would have his trial at Huntingburg, otherwise they would take him to Indianapolis; was not acquainted with court; had never been in a court before and did not know how they conducted business; got to Huntingburg about 9 o'clock; said they would try him at Indianapolis; that he would get the full extent of the law; figured that if tried at Indianapolis would not get to see his wife and child; that, if tried at Huntingburg, they would give him the least sentence they could; that he would get a jail sentence and be in Jasper where his wife could see him; that it made him scared; asked one of the men, believe it was Marshall, about a lawyer; they let him sit in the automobile until they got the city marshal, when they took him to the jail; took him to the city hall; called one of the men and asked him about an attorney; he said he would not need one if he plead guilty, and if he did not, they would take him to Indianapolis, and the penalty was one to five, or two to ten years; didn't know what to do, and had no one to advise with; believed they would give him the least penalty; relied on what they said; his wife was with him in Huntingburg.

Appellant's wife testified that on the way to Huntingburg, Mr. Marshall told her husband they would be easy on him if he plead guilty, and if he didn't, they would take him to the federal court, and they would give him two to ten years; her husband wanted to know if he could get someone to help him out and was told it was no use to try; they told her the best thing for appellant to do was to plead guilty; that it would be lighter for him.

William Marshall, a federal prohibition agent, testified that he arrested appellant; that three other federal men were with him at the time; on the way to Huntingburg, had talk with appellant about pleading guilty and told

him the probability was if he plead guilty to one charge, they would not file the "still" charge against him, and then he could take whatever the mayor gave him; had found still; did not say anything about not being allowed an attorney; when they got to town, thinks he told appellant he would not need an attorney if he plead guilty; prosecuting attorney came to jail after being called; did not hear any one say anything about life imprisonment; no one in his presence promised appellant would get the least punishment if he plead guilty; saw appellant sign a paper and saw the prosecutor swear him to it; appellant did not appear to be frightened; in a conversation with appellant, he was told the federal officers and the prosecutor thought a Mr. Seger was the principal and they preferred to get him rather than appellant, and, in that connection, he was told they would not prosecute on the charge of having a still if he plead guilty to manufacturing in another charge.

Louis Wagner, mayor of Huntingburg, testified that he was in charge of a meeting of the city council when appellant was brought in, and that he made no promise of any kind to appellant in relation to the penalty or his pleading guilty; that the prosecuting attorney, in court, offered appellant the privilege of getting an attorney; that appellant declined to get the services of an attorney. William F. Dudine, prosecuting attorney, testified that he was called by Mr. Marshall to come to Huntingburg and prosecute a charge against appellant; that, when he got there, he found the four federal agents, who reported the facts to him; that he had a conversation with appellant on the proposition of offering to file a charge of manufacturing and not to file a charge of having possession of a still if he would plead guilty to manufacturing; dwelt on the subject that he considered Seger as the principal violator and he wanted appellant to assist the State in prosecuting that man;

that, after such discussion, appellant, of his own free will, and after being informed that any statement he might make might be used against him, signed and was sworn to an affidavit in which he admitted he had been making liquor for Seger; that he never promised appellant he would be given the smallest penalty if he plead guilty; that he at no time said anything about life imprisonment; that the mayor was not present at the time of his conversation with appellant; that he informed appellant he had the privilege of securing an attorney; that he declined to do so, and at that time appellant plead guilty; did not mention anything about Indianapolis; did not recall anybody doing that; told him, if he plead guilty, the witness would leave the penalty to the mercy of the court.

The affidavit signed by appellant and mentioned by the prosecutor was read in evidence and, in substance, is as follows: That he, appellant, made the statement on his own free will and without any promise of any kind; that he had known Seger several years; had worked for him several months; met Seger in Evansville and he agreed to make arrangements to put appellant on a farm; Seger moved him to the farm; Seger brought the still out there; they agreed that Seger would bring the supplies from Evansville and that Seger would pay appellant $2.50 per gallon, appellant to pay for one-half of supplies; at first made about five gallons a week; appellant was to and did make the liquor.

The evidence given on the hearing of the application to withdraw the plea is conflicting, and when the trial court has acted on conflicting evidence, an appellate court will not review its ruling. Under the evidence, we cannot say the trial court abused its discretion in refusing to allow the plea of guilty to be withdrawn. See *Capps* v. *State* (1928), 200 Ind. 4, 161 N. E. 6.

Section 202 of the Criminal Code, Acts 1905 p. 584,

§2234 Burns 1926, provides that when the accused pleads guilty, such plea shall be entered on the minutes, and he shall be sentenced. There is no issue for trial. With such a plea in the record, nothing remains to be done except to pass sentence. The court may defer judgment and hear evidence on the question of punishment. *Smith* v. *Hess* (1884), 91 Ind. 424.

With the plea of guilty in the record, the court did not err in refusing to submit the question of punishment to a jury.

Judgment affirmed.